<pre>
 1                    UNITED STATES DISTRICT COURT

 2                  EASTERN DISTRICT OF NORTH CAROLINA

 3                                  )
     SCOTT JOHNSON ET AL.,         )
 4                                  )   DOCKET NO. 7:21-CV-00188-D
                        Plaintiffs, )
 5                                  )
     vs.                           )
 6                                  )
     LENDLEASE (US) PUBLIC         )
 7   PARTNERSHIPS, LLC, ET AL.     )
                                    )
 8                      Defendants. )
     _____
 9

10                    TRANSCRIPT OF MOTION HEARING
               BEFORE MAGISTRATE JUDGE BRIAN S. MEYERS
                TUESDAY, JANUARY 11, 2022; 10:09 AM
11                    RALEIGH, NORTH CAROLINA

12   FOR THE PLAINTIFFS (All present by video conference):
             Perry & Brandt, Attorneys at Law
13           By:  Michael K. Perry, Esq.
             P.O. Box 2108
14           Wake Forest, NC 27588

15           Just Well Law, PLLC
             By:  Kristina S. Baehr, Esq.
16           2606 W. 8th Street
             Unit 1
17           Austin, TX 78703

18

     FOR THE DEFENDANTS (All present by video conference):
19           Husch Blackwell, LLP
             By:  Michael Klebanov, Esq.
20           750 17th Street, NW
             Suite 900
21           Washington, DC 20006

22           Cranfill Sumner & Hartzog, LLP
             By:  Stephen Jenkins Bell, Esq.
23           101 N. 3rd Street
             Suite 401
24           Wilmington, NC 28401

25    Audio Operator:                CLERK'S OFFICE PERSONNEL
</pre>

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

eScribers, LLC
7227 N. 16th Street
Suite 207
Phoenix, AZ 85020
973-406-2250
www.escribers.net

Proceedings recorded by electronic sound recording; transcript
produced by transcription service.

(973) 406-2250 | operations@escribers.net | www.escribers.net

Colloquy

1                    P R O C E E D I N G S

2          THE COURT OFFICER:  All rise.  This Honorable United

3    States District Court for the Eastern District of North

4    Carolina is now in session.  The Honorable Judge Brian S.

5    Meyers presiding.  Be seated and come to order.

6          THE COURT:  Good morning, everyone.  We are here in

7    the United States District Court for the Eastern District of

8    North Carolina sitting in Raleigh for a hearing on the

9    defendants' motion to stay discovery in the case of Johnson et

10   al. v. Lendlease Public Partnership Holdings, LLC, case number

11   7:21-CV-188 which was recently transferred to Judge -- United

12   States District Judge Dever.

13          For everybody's awareness, everything is being audio

14   recorded here.  This is certainly the common practice if it

15   would be if you all were here in person, and it's not

16   particular to this case.  Why don't we start with counsel

17   identifying themselves for the record, and we'll start with

18   counsel for the plaintiffs.

19          MS. BAEHR:  Your Honor, I'm Kristina Baehr, and I

20   represent the Johnson family.  And with me is Mike Perry who

21   also represents the Johnsons.

22          THE COURT:  Very well, thank you.

23          Next, counsel for the defendant.

24          MR. KLEBANOV:  Your Honor, This is Michael Klebanov

25   here on behalf of defendants with counsel Stephen Bell.

Colloquy

1        THE COURT:  Very well.  Mr. Klebanov I hope you are

2    feeling okay.  I certainly got the motion that you've had a

3    COVID exposure, so I appreciate everyone's willingness to be

4    able to hold this hearing remotely.  I always like to --

5    prefer to do things in person when possible, but certainly

6    given the pandemic and otherwise, it's most important to keep

7    the case moving along.  So I hope that you are feeling okay as

8    it is.

9        MR. KLEBANOV:  Thank you.  I appreciate you being

10   willing to make this a virtual proceeding for that reason.

11       THE COURT:  Certainly, and I will say if at any time

12   due to technical issues if someone who is attending the

13   hearing cannot hear or see what's going on, please wave your

14   hand or otherwise let me know so that we can pause to allow

15   the video to catch up or fix any glitches that we need to.

16       We are here, as I said, on the defendants' motion to

17   stay discovery.  And what I'd planned to do is hear argument

18   from either side and then address any issues that we need to.

19   I will likely take this matter under advisement after hearing

20   argument from the parties.

21       As it is, the defendants' motion we will begin with

22   the defendant, and I'll hear any argument you wish to make.

23   Certainly have read the motion to stay and the responses, and

24   then the notices and responses that were also filed.  I'll

25   address that a bit later.  But that said, Mr. Klebanov I

Colloquy

1    believe you are the one arguing on behalf of the defendant,

2    and we'll let you go ahead.

3         MR. KLEBANOV:  Thank you, Your Honor.  If it is okay

4    with you, could I share a PowerPoint screen with everyone and

5    the Court?

6         THE COURT:  You certainly may.

7         MR. KLEBANOV:  All right, thank you.

8         THE COURT:  And I will say for purposes of the

9    record, I will ask that following the hearing you provide a

10   copy of this to the clerk of court so that the record can be

11   complete as far as this is a audio-recorded matter, but the

12   video is not being recorded.  So I want to ensure that

13   everything is indeed captured.

14        MR. KLEBANOV:  Absolutely.  We'll make sure to do

15   that.  Thank you.

16        So I shared a screen now.  Can you see this, the blue

17   screen?

18        THE COURT:  I cannot.  And on my side the video

19   screen has gone blank.  Can the parties still hear me?  Mr.

20   Klebanov?  Mr. Klebanov, if you can hear me, I cannot hear

21   you, nor can I see anything you may be sharing on the screen.

22        Melissa, is there a way to message them and let them know

23   they need to pause?

24        (Pause)

25        THE COURT:  Is there a link to that?  I can just --

Colloquy

1  it doesn't need to be on the screen.  I can -- unless that's

2  for recording purposes, I can pull up the --

3         THE CLERK:  (Indiscernible), she's on her way up.

4         THE COURT:  Mr. Klebanov --

5     (Recess from 10:20 a.m., until 10:21 a.m.)

6         THE COURT:  Okay, Melissa, are we ready to go now?

7  Okay.

8         Mr. Klebanov, we are ready to proceed now.  It

9  appears that -- I wanted to make sure we had the recording

10 also activated here so the audio is again being recorded.  For

11 your knowledge, there is not a screen share at this point

12 here.

13        MR. KLEBANOV:  Okay.  Yeah, I turned it off because I

14 thought it might have been freezing the video.  If it's okay

15 with Your Honor, I'll try one more time.  If it freezes the

16 video and audio, in the interest of time, I'll just proceed

17 without it.  Is that okay if I give it one more try though?

18        THE COURT:  That is what we will do.  If it doesn't

19 work, please proceed without it.

20        MR. KLEBANOV:  Yes.  Yeah, this is clearly -- the

21 Court is now frozen every time I click screen share, so I'm

22 just going to stop sharing my screen.  Your Honor, can you

23 hear me?

24        THE COURT:  I can.  Your screen is currently up on my

25 side, and it is now down.  Okay, we'll proceed without the

1   PowerPoint.

2          MR. KLEBANOV:  Yeah.  Yes, thank you.  All right,

3   thank you for understanding.  Sorry for the time.  I'm going

4   to just jump right back into it.  Your Honor, did you hear any

5   part of the argument, or should I begin from the beginning?

6          THE COURT:  You should start from the beginning.  I

7   heard none.  Once you started talking, it was completely dead,

8   so please start from the beginning.

9          MR. KLEBANOV:  Okay.  All right, so we're here today

10  to ask the Court to grant defendants' motion to stay discovery

11  while the motion to dismiss is pending.  And the first thing

12  that we want to note, as Your Honor's well aware, is this is

13  actually the norm and the routine, not the exception.  And

14  that's not just true across federal courts but specifically in

15  the Eastern District of North Carolina.  And we cited some

16  cases in our brief that also reflect this point, like the Remy

17  (ph.) case and Loney (ph.) v. State collection case that show

18  that in the Eastern District of North Carolina when you've got

19  a pending motion to dismiss, it's routine to grant that stay.

20          Now, we're not going to just rest on that alone.

21  We'll discuss, and we'd like to discuss why the specific

22  factors the Court considers in issuing a stay strongly

23  militate in favor of that.  And there are three factors that

24  this Court would usually consider, and those include the

25  potential that the dispositive motion would terminate the

1    claims in the case, or just terminate them as to particular

2    defendants. And that's just the potential. It's not

3    analyzing how strong they are. It's just can it get rid of a

4    defendants in their entirety.

5        That second element is going to be is there strong

6    support for the motion. And a third is is there irrelevancy

7    of the discovery for the dispositive motion. So it's not is

8    discovery irrelevant to the case. It's just is discovery

9    irrelevant to the pending motion to dismiss.

10        And I'd like to briefly take each of those factors

11    for this Court's consideration. And by the way, as the Court

12    remembers, they're not elements. It's not that each one has

13    to be fully met. It's that the Court considers the three

14    together. And if they militate in favor of that motion to

15    stay, then it would grant the motion to stay. So let's take

16    them one by one though.

17        That first motion -- that first factor is clearly in

18    favor of motion to stay because the motion to dismiss has the

19    potential to terminate all the claims in the case. And

20    defendants have a derivative sovereign immunity argument, and

21    if the Court grants that argument, then that leads to

22    dismissal of the entire case based on a lack of subject-matter

23    jurisdiction.

24        Separate and apart from that argument, defendants

25    have well-founded arguments for why five of the eight

Colloquy

1    defendants are not subject to personal jurisdiction in front

2    of this Court.  If any of those are agreed with by the Court,

3    then that means the entire case is dismissed as against that

4    particular defendant.  So the first factor supports granting

5    the motion to stay.

6         In addition though, there are also 12(b)(6) arguments

7    in the motion to dismiss that would lead to dismissal of

8    entire claims for various pleading defects or bars to relief.

9    And at other times Eastern District of North Carolina cases

10   like the Berissit (ph.) case in our pleading have granted a

11   motion to stay discovery, even when the motion to dismiss

12   wouldn't even have the potential to get rid of the entire

13   case.  But even so here, this motion to dismiss does have that

14   potential.

15        So if we look at the second factor, that also

16   strongly militates in favor of granting the motion to stay.

17   And that second factor is that the defendants have shown

18   strong support for the motion to dismiss.  This does not

19   require an evaluation right now of the motion to dismiss.

20   This is just a cursory peek and question of is there strong

21   support for the merits, which as the Somey (ph.) and McMillen

22   (ph.) cases in our briefing show just means are there

23   significant issues that the Court has to consider.

24        And McMillen's a great example, actually, because in

25   that case, a failure to exhaust pre-suit remedy was a

Colloquy

1    significant issue showing strong support.  And that's one of

2    the arguments that defendants have in their motions.  And

3    defendants' original motion to dismiss is thirty pages.  It

4    has sworn declarations where necessary on the personal

5    jurisdiction arguments.  But in addition to personal

6    jurisdiction arguments like we've discussed there's a subject-

7    matter jurisdiction argument and different failure to state

8    claim arguments, which is all to say that there is strong

9    support for the motion to dismiss.

10           And I'd like to pause for a second on the

11   jurisdictional point because courts have repeatedly recognized

12   that a stay in warranted of discovery while any issue of

13   jurisdiction is being resolved.  And as the Fourth Circuit has

14   said, that requirement that jurisdiction be established

15   springs from the limits of judicial power.  And it just makes

16   sense that there not be any requirements for discovery of

17   defendants if it's not even clear they're subject to the

18   jurisdiction of their court or that has to be litigated.

19           The third factor, the final one, also militates in

20   favor of a stay, Your Honor, because there is no discovery

21   needed at this time to resolve the motion to dismiss.  The

22   motion to dismiss the defendants filed is based solely on the

23   complaint with the exception of the personal-jurisdiction

24   argument.  And plaintiffs there have not asked for -- or

25   anywhere asked this Court for any discovery or moved for

Colloquy

1    discovery for the motion to dismiss.  And motion-to-dismiss

2    briefing is now closed, so even if plaintiffs might have a

3    position that well, discovery's always going to be helpful for

4    our defense, that's not at issue now in front of this Court

5    for this motion to dismiss briefing, which is now closed as

6    defendants filed their reply brief yesterday.

7         So all the three factors strongly militate in favor

8    of granting a motion to stay of discovery at this time.  And

9    separate and apart from that, the parties also are scheduled

10   for mediation on March 2nd.  And that also has the potential

11   to resolve all the claims, even before a ruling for our motion

12   to dismiss.  So that alone provides an extra reason why this

13   Court could grant the motion to stay discovery.

14        And Your Honor, the final thing to sum up with here

15   is that the stay is warranted not just because of all the

16   factors for the motion to dismiss, but also because of that

17   mediation.  And I'd like to point out that I don't think -- we

18   didn't see that plaintiffs actually filed an opposition to

19   defendants' motion to stay.  They did, however, file the

20   notice of related case regarding discovery and a different

21   opposition brief regarding our motion for emergency relief.

22   In that they only cited one case, suggesting that there

23   shouldn't be a motion to stay.  It was the national coding for

24   Valley Forge case, Your Honor, also from the Eastern District

25   of North Carolina.  And we'd just like to highlight that just

Colloquy

1    like all the other cases that defendants cited, that actually

2    ended up granting a stay of discovery and finding it

3    warranted.

4         So in defendants' view, this is a pretty clear issue

5    with the different factors and the mediation coming up that

6    there should be a stay of discovery pending a ruling on the

7    motion to dismiss.  Thank you.  And I'm happy to answer any

8    questions.

9         THE COURT:  Thank you.

10        I don't have any questions for the defendants at this

11   time, so I will move to the plaintiffs.  And Ms. Baehr will

12   you be presenting the argument?

13        MS. BAEHR:  I will, Your Honor.

14        THE COURT:  Very well.  I'll hear any argument you

15   wish to make.

16        MS. BAEHR:  Thank you.  I want to circle back to what

17   this case is all about.  This isn't a corporate case.  This

18   isn't a patent case.  This is a personal-injury case with a

19   family that has been very injured by a house that was

20   literally coming apart at the seams.

21        They moved out of that house in August 2019, and they

22   have been negotiating with the defendants ever since.  They've

23   been trying to get mediation.  They've been trying to get

24   resolution.  They filed a class action because they wanted to

25   draw attention to this problem.  But the class action was

Colloquy

1    taking so long that they separately filed a single case, Your

2    Honor, to get relief for their family.  They need medical

3    attention now, and they need financial recovery so they can

4    rebuild their lives.

5           So that's what the case is about.  The question about

6    the factors, and I want to go through them one by one as well.

7    One, there's the potential of the motion to dismiss to resolve

8    the claims.  I want to actually address this along with the

9    likelihood of the motion to dismiss to succeed.

10          Your Honor, what the plaintiffs didn't -- what the

11   defendants didn't mention, even before this Court, is that

12   they already made those exact same arguments in a prior case

13   before Judge Dever in the class action, with the same

14   plaintiffs.  And Judge Dever dismissed every single one of

15   their arguments with the exception of one.

16          They argue in this case that there is derivative

17   sovereign immunity.  And I don't understand why they're making

18   that argument in this case, but they didn't make it in the

19   class action.  I haven't quite figured that out, but the

20   argument would apply equally to that case.  And I think that

21   they just wanted a second bite at the apple.  I'm not sure.

22   But what we do know if that every court to address the

23   question of whether a private third-party contractor is

24   entitled to derivative immunity in a military housing case has

25   said no.

Colloquy

1          The United States has even weighed in on that

2     question in at least two different jurisdictions and has filed

3     its own statement of interest to say that the defendants are

4     not entitled to derivative sovereign immunity in cases of

5     military housing.

6          So this motion to dismiss is unlikely to succeed.  It

7     may take the Court a long time to address it because, just

8     like they mentioned, they filed -- it's thirty pages, there

9     are declarations.  It's long and detailed and a waste of the

10    Court's time because they're all the arguments that Judge

11    Dever already addressed.

12         And not only did they not mention that in their

13    motion to dismiss, but they didn't even mention it to you in

14    their argument.  So at every stage this defendant has moved to

15    delay the recovery for the Johnsons.

16         So the motion to dismiss is not going to be

17    successful.  And the question of discovery is next, Your

18    Honor.  Discovery, so one of the reasons they've moved to

19    dismiss is because they -- or they've moved to stay is because

20    they say we have this mediation coming.  And yet, for the

21    mediation they have asked for discovery.  They have asked us

22    to produce all of the medical records, medical diagnoses, test

23    results, and so they're demanding discovery there, and yet

24    they're moving to delay this case and discovery in this case.

25         Why?  There is a discovery issue in the motion to

escribers
(973) 406-2250 | operations@escribers.net | www.escribers.net

Colloquy

1    dismiss.  And that is the ground lease and the operating

2    agreement that forms the basis in part for this lawsuit.  The

3    reason that Lendlease has military housing in the first place

4    at Camp Lejeune is because they were given a ground lease and

5    an operating agreement.

6           Now, we have asked for that many times in

7    correspondence with the defendants.  And at first they said

8    oh, yeah, we'll give it to you, we will.  And then they walked

9    that back because they said we don't have to give it to you

10   because there's no discovery in this case yet.  And so they're

11   demanding in mediation that we produce discovery, and yet

12   they're refusing to produce discovery either in this case or

13   for the mediation.

14          It's an unfair position.  So we can talk about case

15   after case after case related to a pending motion to dismiss,

16   but all of those cases are irrelevant in these circumstances

17   because here we have a personal-injury case with a single

18   family that desperately needs relief in a case in a dispute

19   that has already been pending for 2.5 years.

20          So Your Honor, I'm here today not just to oppose the

21   motion to stay, but also to ask the Court to give us a trial

22   date because if we could get a trial date from the Court --

23   you began this hearing by saying it's most important to keep

24   this case moving along.  And we agree.  We agree.  If we can

25   just get a trial date we can move backwards from the trial

Colloquy

1    date, we can come to an agreement with the defendants, and we

2    can march forward.

3          We wish we could be hopeful about that mediation on

4    March 2nd.  We wish we could, but this plaintiffs' family, the

5    family has been seeking mediation for two-and-a-half years.

6    And we haven't been able to come to the table.  And we say --

7    at every turn we said we'll come with a mediator of your

8    choice at a time of your choice in a place of your choice at

9    any time.  And so we're ready to mediate.  We want to resolve

10   this case.  We need the Court's help to keep it moving forward

11   in these circumstances.  Thank you.

12         THE COURT:  Ms. Baehr, I want to clarify a couple of

13   the points that you made in your argument.  With regard to

14   mediation, as the defendants stated there's a mediation

15   scheduled for March the 2nd.  Is that an agreed-upon date

16   between the parties?

17         MS. BAEHR:  It's an agreed-upon date, but it's

18   conditional on us producing discovery.

19         THE COURT:  As it relates to the mediation?

20         MS. BAEHR:  Well, no, as it relates to this case.

21   And so they say that we -- that they will not come to the

22   table at mediation unless we produce all of our medical

23   records, all of the test results, and medical diagnoses, which

24   is basically skipping ahead to the close of discovery and

25   expert opinions.  And we're happy to provide all of that.

Colloquy

1      We're ready to get the case on the -- the show on the road, if

2      you will.  But they're asking for discovery as a condition for

3      that mediation date.  And yet, Your Honor, they're not willing

4      to give us any discovery in advance of mediation.

5           THE COURT:  One technological thing to note that

6      someone needs to put their email or otherwise on mute.

7      They're -- at least on this side, there is a ding that keeps

8      coming up every so often, so if everyone could please check

9      their computers to ensure that's muted to the extent possible.

10          MS. BAEHR:  That may have been me, Your Honor.  I

11     need to get my twelve-year old to tell me how to mute part of

12     my computer but not the other.  I think I closed it out.

13          THE COURT:  Certainly.  Thank you.

14          I think I clearly understand the parties' position

15     with regard to the motion to stay and the pending motion to

16     dismiss.  The related issue and one of the bases stated in the

17     motion to stay discovery, that being mediation, I do want to

18     hear more from the parties about that.  It appears there is a

19     March the 2nd date set for mediation.  And I will -- this

20     question is for the defendants.  With regard to that date, is

21     that -- sounds like this is some kind of conditional date

22     pending some discovery to be provided to you all by the

23     plaintiffs?

24          MR. KLEBANOV:  Your Honor, we have asked plaintiffs

25     to provide us some information before the mediation.  As far

Colloquy

1   as we're concerned, we have reserved that date in our

2   calendar, and we've gotten all the relevant individuals to

3   plan to be available for that date. And we would do it no

4   matter what.

5           What we're -- we're asking for those materials to

6   have a productive mediation. So if plaintiffs don't provide

7   us anything that we're asking for, we'll still sit down and

8   talk to them, but we won't probably be able to have a

9   productive mediation without it. And to be clear, we're not

10  asking for the types of things that would be a product of

11  federal court litigation. We're not asking for

12  interrogatories, request for productions, request for

13  admissions, depositions, expert reports. We're not asking for

14  any of that.

15          What we're asking for is because plaintiffs have sued

16  defendants and are asking them for money, we're asking for a

17  little bit meat on the bones to understand their specific

18  injuries, to understand the specific bases for their injuries,

19  and to get an itemization of their damages. That's kind of

20  the key item because that's just as a factual matter and a

21  practical matter what we need to be able to have a productive

22  mediation.

23          For that reason, we've also asked for some related

24  material, and we understand that they're -- you know, we've

25  asked for all medical records so we can do the evaluation. We

1  understand, based on our discussions with counsel, that there

2  might not be all medical records.  It might be some medical

3  records, and we're happy to continue having that conversation.

4  But that is very different from the types of obligation that

5  would occur if there was federal court discovery.

6        And for that matter, what we're discussing here is

7  these are questions for the plaintiffs to make sure of a

8  productive mediation, which is very different than subjecting

9  defendants, who are not subject to personal jurisdiction in

10 this Court -- subjecting them to discovery and depositions and

11 the other items that would flow if the Court issued and

12 demanded discovery at this point while there's a pending

13 motion to dismiss.

14       And so I think that hopefully answers Your Honor's

15 question.  I also wanted to use that as a segue to respond to

16 a point or two that opposing counsel made.  Could I do that at

17 this time?

18       THE COURT:  Before we move to that, are the documents

19 and information that you're requesting -- are these not -- I

20 recognize it's not in the form of interrogatories or request

21 for production, but are these not -- is this not information

22 that would be provided during the discovery process at some

23 point?

24       MR. KLEBANOV:  I believe some of this would be

25 provided early in the discovery process.  That's right, but we

Colloquy

1   are not asking for A, the formality of all the various other

2   types of discovery that would be part of the process. And

3   we're not also asking for the full scope or type of discovery

4   that we would have in the litigation process.

5           MS. BAEHR: Your Honor, may I respond to that?

6           THE COURT: You may.

7           MS. BAEHR: I think the argument itself shows how

8   one-sided this is. This is a company that has -- it's a huge

9   corporation. They have a big firm representing them. The

10  discovery in a small personal-injury case, from a single-

11  family personal-injury case is not a burden to this company at

12  all.

13          But what he's just articulated is that he is

14  unwilling to provide any discovery from the defendant, and yet

15  he demands discovery from the plaintiff. And this is exactly

16  the discovery that happens in a personal-injury case in

17  federal court. You produce medical records, test results,

18  diagnoses, that's exactly what the plaintiffs have been asked

19  to produce.

20          And so this conundrum that they have set up here is

21  that we can't get any discovery from them, but they can get

22  every discovery from us that's relevant to determining the

23  value of this case. How can we have a productive mediation

24  when we don't have any documents from them, including the very

25  basis ground lease and operating agreement that forms the

Colloquy

1    basis of the claim in the first place?

2         MR. KLEBANOV:  Your Honor, can I address that

3    specific two documents that opposing counsel mentioned?

4         THE COURT:  Go ahead.

5         MR. KLEBANOV:  The ground lease and the operating

6    agreement, it's interesting opposing counsel said they form

7    the basis of plaintiffs' complaint.  That's not the impression

8    that we've gotten from the pleadings.  And the reason that

9    we've asked for specific materials is because if the Johnson

10   family's claim is that they have had personal injuries as a

11   result of living at homes then they should be able -- to

12   ensure productive mediation, we would have some kind of

13   specifics about those injuries and the cause and the damages.

14   Not because we're asking them to jump through hoops but

15   because that's how you are able to evaluate what a mediation

16   would look like.

17        And the documents are the only -- the two documents,

18   the ground lease and the operating agreement are the only two

19   documents that opposing counsel's asked us for.  To be clear

20   what our position has been, is that those documents, which

21   opposing counsel asked for only after we filed the motion to

22   dismiss -- this wasn't a part of their request on the other

23   point but only in response to our motion to dismiss.  We have

24   been clear that those are not required for the motion to

25   dismiss because the motion to dismiss is a facial attach on

Colloquy

1    the complaint.  It is just saying that the complaint and its

2    allegations are insufficient to withstand and either needs to

3    be in some -- some cases it would either be amended or not

4    amended at all.

5         And the point is that there is nothing about the

6    motion to dismiss that requires documents.  They asked for it,

7    nonetheless.  We have been clear that because they do not need

8    those documents for the motion to dismiss, we don't think

9    they're entitled to them.  However, as a sign of our good

10   faith, we would be willing to produce them with appropriate

11   redactions or a protective order as part of this mediation

12   process.

13        Now, again, we don't think those documents are

14   relevant to having a productive mediation, but nonetheless,

15   we're still willing to produce those.  So I think we still

16   have some agreement there, and I don't think that really --

17   and I think the bigger point here is none of that -- and

18   opposing counsel's reference to the size of defendant.  There

19   are multiple defendants, eight different defendants.  Five of

20   them who should not be subject to the personal jurisdiction of

21   this Court.  And opposing counsel's views about their size

22   does not allow the Court to run roughshod over due process.

23   If the defendants should not be subject to the Court's

24   jurisdiction, that doesn't excuse subjecting them to juris --

25   excuse me, subjecting them to discovery.  Thank you.

Colloquy

1          THE COURT:  Well, it appears to me that there is a --

2    clear through the filings in this case there is a

3    communication issue between the parties because what I'm

4    hearing is that there's a mediation date that's set, which

5    certainly would be beneficial potentially to both parties to

6    resolving the matter.  And there is some discussion whether

7    albeit informal of discovery, what really amounts to discovery

8    back and forth.  They can be couched as information or

9    otherwise, but it is discovery back and forth.

10          And there certainly have been -- certainly are cases

11   where the parties have agreed between themselves as is the

12   standard here in the Eastern District of North Carolina for

13   the parties to work out to the extent possible any discovery

14   issue that there may be prior to getting the Court involved.

15   I understand motions to stay discovery are often filed early

16   on in the case, and appropriately so.  However, there are

17   certainly instances where the parties see that mediation

18   earlier in the discovery process or early in the case would be

19   mutually beneficial, and the parties agree to certain exchange

20   of documents prior to so that it is a useful process.

21          Certainly not in the Court's -- the Court is not in

22   the best position nor is it going to work out every last

23   detail of discoverable information in the case when the

24   parties can discuss that between yourselves.  And so what

25   would be considered relevant or otherwise for purposes of

Colloquy

1    mediation, that could certainly be agreed upon.  An exchange

2    of documents, what both sides would agree was necessary for

3    each to move forward and have a meaningful mediation.

4         Mediation may not work.  It may not, but if it's

5    going to -- if it's going to happen it seems to me that both

6    sides may benefit from that exchange.  What I've heard is the

7    defendants have requested documents and defendant is also

8    willing to, as was just stated by Mr. Klebanov, to provide

9    certain documents, whether they believe them to be relevant or

10   not to the plaintiffs.  That is one of the first agreements

11   between the parties that I've seen in the filings.  And that's

12   a good thing because it moves the ball if there is some amount

13   of information to be exchanged.  As would certainly be the

14   purpose of a Rule 26(f) meeting and subsequent report to be

15   filed after that.

16        As the parties are aware, I did stay the deadline for

17   the meeting and the filing of the report pending the motion to

18   stay discovery.  I did not think it was beneficial to the

19   Court in any way for the parties to go back and forth prior

20   to -- with additional filings prior to my ruling on the motion

21   to stay.

22        So that said, with regard to the 26(f) report, and

23   I'll hear from both sides with regard to this, but it sounds

24   as if there is structure needed to move forward with this

25   case.  And it would certainly behoove the parties to be able

Colloquy

1    to speak with one another to work out what was best there.  It

2    also seems that there may be the ability to work something out

3    for a stay of -- a temporary stay of discovery or otherwise

4    until there is a ruling on the motion to dismiss if there's

5    some exchange of documents prior to or as necessary for a

6    mediation.

7           That said, these are all issues that the parties are

8    best suited to discuss with each other.  I'll hear first from

9    the defendant, Ms. Klebanov, because we're here on your motion

10   to stay discovery.  I'm hearing that there may be some

11   agreement that could be made between the parties at least to

12   some degree to move the case forward on exchange of

13   information.

14         MR. KLEBANOV:  Thank you, Your Honor.  I think the

15   context to that is that when you get into the -- when we would

16   get into the specifics of a Rule 26(f) report, we would have

17   to be talking about different defendants and their obligations

18   and the different requirements for different claims.  And

19   plaintiffs would be taking the view that well that that's not

20   maybe a discussion we don't have to have, but that is a burden

21   on the defendant to start talking about different defendants

22   to have to, let's say, find a custodian, do witness

23   interviews, who's going to be deposed when some of those

24   defendants shouldn't be in this case at all.

25         So that's why defendants -- and that's why I feel

Colloquy

1    very strongly that a Rule 26(f) report and conference is not

2    appropriate until there's a ruling on the motion to dismiss.

3    And I think this is an appropriate time to point out that

4    opposing counsel said that defendants made those exact same

5    arguments and Judge Dever dismissed them all.  That's just not

6    factually accurate, and that's something that's really I think

7    to point out here, that the arguments in front of Judge Dever

8    did not include the personal-jurisdiction arguments.  That is

9    the first time that they are appearing in front of this Court,

10   whether it's a related case or not.

11          And the derivative sovereign immunity argument was

12   not ruled upon by Judge Dever.  Parties withdrew it based upon

13   an agreement.  And Judge Dever didn't rule on it, so the

14   balance of the pending motion to dismiss is something that

15   Judge Dever did not consider.

16          And I think that that's an important context because

17   opposing counsel has this view that well, there's really no

18   strength at all to the pending motion to dismiss.  And we're

19   pretty adamant that's not the case.

20          And I know they referenced also a Watley (ph.) case

21   where the U.S. government had weighed in under sovereign

22   immunity.  But that was a point that they were actually later

23   overturned on by the Fourth Circuit.  They had a view -- the

24   federal government took a position on derivative sovereign

25   immunity in a particular case saying it's not a subject-matter

Colloquy

1    jurisdiction bar.  And the Fourth Circuit later in a different
2    case, Cunningham, said no, no, no, it is a bar, a subject
3    matter jurisdiction bar.
4          So and it's telling also that the federal government
5    has not filed such a statement of interest here.  So that all
6    goes to show that the motion to dismiss raises important vital
7    issues that not only could dispose of the entire case but at
8    least as to entire claims as to defendants, such that a 26(f)
9    report wouldn't make sense at this time.
10         And I think that's different than -- we appreciate
11   Your Honor's suggestion of some kind of discussion with
12   plaintiffs about what we should do at this time.  And I think
13   what makes sense is that we should still have a mediation.
14   And if the plaintiffs want to move things along we think
15   that's a good thing to do, and to discuss what we would have
16   as part of that mediation but not something that would go into
17   obligations for defendants who shouldn't be a part of this
18   case or would otherwise not be critical to a productive
19   mediation.
20         THE COURT:  Have you all had that conversation?
21         MR. KLEBANOV:  I won't -- subject to opposing
22   counsel's view, I'd say we've had email correspondence about
23   it, maybe I don't think we've had a face-to-face or discussion
24   about exactly why we need those documents, but perhaps they
25   might have a different view on that point.

Colloquy

1          MS. BAEHR:  I can start off by addressing that, Your

2    Honor.  We absolutely agree that we need to produce

3    information in order to have a productive mediation,

4    absolutely.  We have literally asked for that operating

5    agreement and ground lease in six separate emails to defense

6    counsel.  They have not produced them.  They've not said that

7    they were going to produce them until just now.

8          So we don't have -- we don't have a productive

9    conversation because it's entirely one-sided that we need to

10   produce information, but they can't be bothered because they

11   have so many defendants.  And here's the challenge, Your

12   Honor.  Those same exact defendants are in this separate

13   lawsuit that's parallel at the same time.  That case is

14   already in discovery.  All they have to do is produce the same

15   discovery to us.  There's no additional burden here.  This is

16   a simultaneous case to a virtually identical case that, in

17   fact, was brought by the same plaintiffs.

18         The Johnsons, to be clear, brought a class action.

19   That class action is proceeding against the same defendants.

20   They haven't argued the jurisdictional issue.  I don't know

21   why not, but they're here in this court, Your Honor.  They

22   have subjected themselves to this Court.  And in fact, the

23   defendants in this case removed themselves from state court so

24   that they could be here in federal court.

25         So there is jurisdiction of these parties before this

Colloquy

1    Court.  And they're already producing the information in the

2    other case.  They just need to produce it to us also.  So what

3    we would propose, Your Honor, what we think would be most

4    effective is please let us go forward with discovery, have a

5    Rule 26(f) conference, get the deadlines on the calendar.

6    This is now personal-injury cases resolved.  We have case

7    deadlines to work with.

8         We've been asking for mediation informally for

9    literally two-and-a-half years.  I mean, we are desperate to

10   have mediation.  But we need court deadlines to have mediation

11   that's effective.

12        I hope that we can resolve it in March 2nd.  I am

13   very doubtful that we will.  It's more likely to be closer to

14   trial, Your Honor, as the rest of the case proceeds.  And we

15   would ask you, actually, to give a trial date today so that we

16   can go forward and have a productive Rule 26(f) conference,

17   get the schedules down.  And yes, if we can come to an

18   agreement about staging discovery or which discovery should be

19   produced first, or what's more important -- as I've said to

20   the defendants given the equities of just even the law firms

21   at issue here, we don't -- this is not going to be a scorched

22   earth discovery right here.  I don't have the bandwidth for

23   that.

24        They might have a scorched earth defense, but we

25   think we can resolve this really efficiently.  I'm hopeful

Colloquy

1    that Mr. Klebanov and I can resolve it amicably.  But I do

2    think that we're going to need Court deadlines to do so.

3         THE COURT:  Well, with regard to the trial date

4    though, be clear, that is a date that will be set by District

5    Judge Dever as with the other related trial deadlines.  It

6    appears in the -- and I understand that these are two separate

7    matters, but there is a -- there is a scheduling order in the

8    related matter.  And there was also a 26(f) report filed in

9    that case.

10        A question for the defendant, there was a 26(f)

11   report filed in the other case, albeit post a ruling on the

12   motion to dismiss.  Is there some other reason why it was

13   filed and could be filed in that case and not this one?

14        MR. KLEBANOV:  Yes, Your Honor, absolutely.  The main

15   reason is because that case does not concern the Johnson

16   family.  They were a part of it, but they voluntarily withdrew

17   from it.  And the discovery in that case does not contemplate

18   the Johnson family.  And that's not just the only distinction,

19   Your Honor.

20        The actual types of claims are different as well.

21   And what I mean by that is opposing counsel in that case has

22   indicated to us that they are going to focus on a rent-

23   abatement theory not personal injury.  And we're having a

24   discussion about that, trying to figure out what discovery is

25   going to look like.  But if that's the case then even if

(973) 406-2250 | operations@escribers.net | www.escribers.net

Colloquy

1    somehow the Johnsons were part of the Burn case, which they

2    are not, even then the discovery would not be overlapping

3    because it wouldn't concern personal injuries.  It would be

4    concerning this rent-abatement theory that they have.

5            And as to the specifics, the named plaintiffs in that

6    case, the Lewis and Burn families, they have somewhat

7    different complaints, different specifics, different homes

8    that they are discussing about.  So the specific discovery

9    that might go on in the Burn case, even if it's class

10   discovery, isn't going to be useful or probative in this

11   matter.

12           And it's worth pointing out that opposing counsel --

13   we still don't agree that it's a related case for those

14   reasons.  But even though it's going on, there are no initial

15   disclosures yet.  All we have is the Rule 26(f) report.  And

16   here, Ms. Baehr has proposed a much more aggressive time line

17   than in the Burn case.

18           And we come to an agreement to disagree about that

19   time line I think based on -- but we'd obviously have that

20   discussion.  But because of that it's not correct to say that

21   this is just a matter of duplicating what's going on in Burn,

22   because A, it isn't going on yet in the Burn matter; and B,

23   even if it were, that would be seemingly on a very different

24   time line.

25           THE COURT:  Let me --

Colloquy

1          MR. KLEBANOV:  And I think --

2          THE COURT:  Let me stop --

3          MR. KLEBANOV:  Go ahead.

4          THE COURT:  -- right there for a moment.

5          MR. KLEBANOV:  Yeah.

6          THE COURT:  And make sure that I'm being clear in my

7   question.  It makes sense that there is different discovery in

8   that case versus potentially this case.  There's certainly

9   going to be overlap and there's certainly going to be other

10  things that are different.  There are different plaintiffs.

11  But with regard to the ability to file a 26(f) report to lay

12  out the parties' positions with regard to scheduling and

13  disclosures and otherwise -- why is it different in that case

14  versus this one?

15          Granted, there are different theories that the cases

16  are proceeding on potentially, but it looks like there was a

17  report filed in -- as is the purpose, obviously, to lay out

18  the parties' positions with regard to discovery.  Because if

19  the motion to stay is not granted, then this puts it back in

20  the same boat that the parties are going to have to have a

21  conversation about when scheduling is best.

22          And so what I'm getting at and what I'm trying to

23  understand is what is the difference between that versus this,

24  other than the parties agreement versus nonagreement here?

25  And I --

Colloquy

1        MS. BAEHR:  Your Honor, I want to address one point

2    because I think the timing of your order coincided with the

3    actual deadline of our Rule 26 conference.  So we actually

4    already had our Rule 26 conference.  We prepared draft

5    documents.  We sent them to opposing counsel. We had a whole

6    conversation about how many depositions we need and what the

7    time line should be.

8        And so because your order came out later that day

9    that stayed that meeting, the meeting had already transpired,

10   and the documents have already been exchanged.  At this point,

11   all we need are the redlines from opposing counsel so that we

12   can come back and present the Rule 26 report.  So we have

13   already had the Rule 26(f) conference.  Opposing counsel and

14   I, we had a great conversation.  We're in alignment on what

15   needs to be done for a Rule 26(f) conference.  We're both very

16   familiar with federal court.  It's easy to finish that process

17   and present it to the court and let Judge Dever decide of

18   course the trial date and then any other deadlines that we

19   disagree on.

20       THE COURT:  Okay.

21       MR. KLEBANOV:  So Your Honor, if I may answer the

22   question as well that was posed.

23       THE COURT:  You may.

24       MR. KLEBANOV:  We did have a discussion.  I think

25   we're not in agreement on a lot of items, and specific

Colloquy

1    deadlines we did have some agreement but there are a lot of

2    items we were not on agreement on.  And our view is that the

3    motion to dismiss could bring us in closer agreement.  So we

4    think that it would actually be more productive for the

5    parties and the Court if we have a ruling on the motion to

6    dismiss before we decide the scope and time line of discovery

7    because that impacts how many defendants are going to be

8    answering different sets of discovery.  And preparing for

9    depositions is going to impact how long -- among other things,

10   it's going to impact how long we think we would need in the

11   case.

12          So that alone, aside from the fact that the Burn case

13   is different from the Johnson case is another reason why it

14   would make sense for a motion to dismiss.  And we understand

15   that opposing counsel wants to get moving on this case.  And

16   if that's the case, then we could just -- if they want to have

17   a hearing, for example, on the motion to dismiss, we're happy

18   to do that if that would be something that would accelerate

19   that process so we can get resolution and, in our view,

20   potentially have a better chance of agreement on the scope of

21   discovery once the motion to dismiss is decided.

22          THE COURT:  Okay.

23          MS. BAEHR:  Can I make one final point, Your Honor?

24          THE COURT:  You may.

25          MS. BAEHR:  I just got finished a tenure as an

Colloquy

1    assistant U.S. Attorney doing personal-injury cases in the

2    Western District of Texas.  And I know that in almost every

3    case there was a pending motion to dismiss.  But the

4    plaintiffs always wanted to move forward with discovery

5    because these are plaintiffs in a personal-injury case who

6    need financial recovery to rebuild their health and their

7    lives.

8         And so the personal-injury context of this I don't

9    want it to get lost because this is a family who needs medical

10   care in the future.  The case has already been proceeding for

11   two-and-a-half years.  We just need to get to a trial.  They

12   need a trial, and hopefully, if we have a trial date that will

13   resolve resolution without a trial.  But that's what this case

14   is really about.

15        And we don't need a lot of back and forth or we can

16   be very efficient, and we can agree with opposing counsel

17   about how to make the process more streamlined.  But that's

18   what this -- I just want to leave the Court with the notion

19   that this is a federal personal-injury case.  And we can

20   resolve it.

21        THE COURT:  Very well.  Before I close the hearing,

22   is there -- I will note that there has been a lot of filings

23   back and forth, and I don't want to hear from the parties on

24   this, let me be clear.  But I want to note for the record

25   there has been a lot of back and forth with notices and

1    responses and replies and otherwise.  And in the interest of a

2    couple of things, particularly -- and I have never practiced

3    outside of the Eastern District of North Carolina, but here in

4    this district in the interest of judicial economy, I would

5    remind both parties to ensure that filings are A, within the

6    local rules and the federal rules with regard to responses and

7    replies and otherwise.  Certainly recognizing that there is

8    absolutely a time and a place to make filings outside of those

9    rules when necessary.

10          B, that the parties should make every effort to

11   discuss these issues related to discovery and other issues,

12   whether couched as information or otherwise, to agree before

13   involving the Court.  It is appropriate to make the motions

14   made with regard to motions to stay.  However, I would

15   certainly advise both sides that when it comes to filing Rule

16   26(f) reports and otherwise, as is obvious, those documents

17   are there to help the Court figure out the best way to proceed

18   in a matter.  And clearly laying out, giving the parties the

19   opportunity to provide that information to the Court.

20          I do understand the defendants' position that if

21   the -- that a motion to stay is warranted because it may

22   change the course of discovery depending on what the ruling is

23   in the motion to dismiss.  However, at the same time, there

24   are -- I'm not going to rehash any issues or arguments that

25   were made by either side along the way because I think that is

Colloquy

1    certainly behind us now on the way -- as far as this case

2    goes.

3         I'm well aware of the email exchanges that have gone

4    back and forth, at least some of them that have been filed

5    between the parties.  And I understand that is the nature of

6    litigation.  It is an adversarial system, obviously.

7         But there's a lot of value in being adversarial and

8    being at each other's throats in moving something forward.

9    And it would certainly be -- the fact that there was a Rule

10   26(f) meeting, albeit potentially due to the fact that my

11   ruling didn't come out later that day and that was the

12   deadline, that's good that you all have met and discussed.

13   That's good that there sounds -- there is a draft report,

14   whether you agree or not on every aspect of it.  It is

15   certainly in the discovery plan and as is the practice -- or

16   excuse me, the order for discovery plan, and as is the

17   practice here that if you all can't agree it's completely

18   appropriate to submit separate discovery plans.

19        That's the way it is.  And either of which would

20   certainly be helpful to the Court.  And at some point in this

21   case, there will be -- the parties will need to file that in

22   some form or fashion.  So I say all that to say I don't want

23   to hear from the parties on that.  I wanted -- I think it's

24   important to make sure that everyone hears that, and that

25   everyone is on the same page.  This is, as many cases, there

Colloquy

1    are a lot of emotions on either side, and as there should be.

2    There's a lot at stake for both parties.  There's a lot at

3    risk for both parties.  But in this district it is certainly

4    the first step that the parties should do everything possible

5    to agree or agree to disagree (audio interference) as the case

6    may be and as the saying goes, and it is certainly appreciated

7    by the Court for the efficient moving forward of cases.

8           That said, I will take the parties' arguments under

9    advisement on the motion to stay discovery.  And I will issue

10   an order accordingly.  Thank you all very much.

11          MS. BAEHR:  Thank you.

12          THE COURT:  Court will be in recess.

13                   (Court is adjourned)

14                    *  *  *  *  *

15

16

17

18

19

20

21

22

23

24

25

1                    CERTIFICATE OF TRANSCRIBER

2

3          I, Tamara Bentzur, court-approved transcriber, in and

4    for the United States District Court for the Eastern District

5    of North Carolina, do hereby certify that pursuant to Section

6    753, Title 28, United States Code, that the foregoing is a

7    true and correct transcript from the official electronic sound

8    recording of the proceedings held in the above-entitled matter

9    and that the transcript page format is in conformance with the

10   regulations of the Judicial Conference of the United States.

11

12                    Dated this 2nd day of February, 2022.

13

14                    /s/ _Tamara Bentzur_

15   _____

16   TAMARA BENTZUR, CET-824

17   COURT-APPROVED TRANSCRIBER

18

19

20

21

22

23

24

25